Related OUT

FILED

Jeffrey Pierce Henderson
c/o 370 N. Cerritos Ave., Apt. 39
Azusa, Cal. [91702-3774]
Email: abba@eanruig.com
Voice Mail: (626) 804-7166

Plaintiff, In Pro Per

2022 FEB 18   PM 3: 55

CLERK      T COURT
CENTR     ST OF CALIF.
    LOS  GELES

BY____ ω̸ω̸____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

**LACV-22-1146-PA-JEM**

JEFFREY PIERCE HENDERSON,

Plaintiff,

v.

JACQUELINE H. LEWIS,
CHRISTIAN R. GULLON, YVETTE
MARCIAS, STEVEN PARRAL,
NICOLE GONZALEZ, DWON
SHEPARD, KATHRYN MULLIS,
TERESA MORALES, KELSEY
JOBLING, SUZANNE
ETCHEBERRIA, ALMA ZAPATA,
ANTOINETTE DAVIS, MARIA
VILLALOBOS, PHYLLIS
AGUILAR, MICHELLE C.
WARRINER, SHERRI R. CARTER,
CARLOS A. JACKSON,
SHANTAL RAE RODRIGUEZ
GALLARDO, DANIEL A.
COVARRUBIAS-KLEIN, JANET
ALDAPA ARAUJO, ALEJANDRO
VILLANUEVA, and DOES 1-10,

Defendants.

Case No.:

COMPLAINT FOR RELIEF

Claim 1: Violations of the ADA
Claim 2: ADA Retaliations
Claim 3: Violations of the Unruh
Claim 4: Professional Malpractice
Claim 5: Vehicle Traffic Injury
Claim 6: Denial of Medical
Claim 7: Denial of Kosher Food
Claim 8: Monell Related Claims

JURY TRIAL DEMANDED

Plaintiff PIERCE HENDERSON ("Plaintiff") specially appears without counsel and alleges as follows:

## NATURE OF THE ACTION

1.   This is action concerns alleged overreach of state and local government agencies and their agents against the civil rights of Plaintiff to enjoy and defend in court his substantial rights.

2.   This action seeks money damages because of state and local officer participation in a private parties' wrongful deprivation of Plaintiff's substantial rights and property. Plaintiff alleges that all of the defendants acted under color of state law and violated Plaintiff's rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution; 42 USC § 12101, et seq. (collectively, "the ADA"); 42 USC §1983; and Cal. Civ. Code § 51 (collectively, "the Unruh"). Plaintiff also brings state law claims pursuant to this Court's supplemental jurisdiction, 28 U.S.C. § 1367.

## THE PARTIES

3.   Plaintiff is an individual residing in Azusa, California, and a citizen of the State of California. Plaintiff was a medically disabled defendant summoned to answer to charges in a state criminal court.

2

4.     Defendant JACQUELINE H. LEWIS ("Defendant Lewis") was an LA County California Superior Court ("LA Court") judge who worked for the West Covina Courthouse ("West Covina"), Dept. 5. Defendant Lewis is sued in her official and personal capacity.

5.     Defendant CHRISTIAN R. GULLON ("Defendant Gullon") was an LA Court judge who worked for West Covina, Dept. 4. Defendant Gullon is sued in his official and personal capacity.

6.     Defendant YVETTE MARCIAS ("Defendant Marcias") was an individual who worked as a judicial assistant for West Covina. Defendant Marcias is sued in her official and personal capacity.

7.     Defendant STEVEN PARRAL ("Defendant Parral") was an individual who worked as a judicial assistant for West Covina. Defendant Parral is sued in his official and personal capacity.

8.     Defendant NICOLE GONZALEZ ("Defendant Gonzalez") was an individual who worked as a judicial assistant for West Covina. Defendant Gonzalez is sued in her official and personal capacity.

9.     Defendant DWON SHEPARD ("Defendant Shepard") was an individual who worked as a judicial assistant for West Covina. Defendant Shepard is sued in his official and personal capacity.

10.    Defendant KATHRYN MULLIS ("Defendant Mullis") was an individual who worked as a court reporter for West Covina. Defendant Mullis is sued in her official and personal capacity.

11.    Defendant TERESA MORALES ("Defendant Morales") was an individual who worked as a court reporter for West Covina. Defendant Morales is sued in her official and personal capacity.

12.    Defendant KELSEY JOBLING ("Defendant Jobling") was an individual who worked as a court reporter for West Covina. Defendant Jobling is sued in his official and personal capacity.

13.    Defendant SUZANNE ETCHEBERRIA ("Defendant Etcheberria") was an individual who worked as a court reporter for West Covina. Defendant Etcheberria is sued in her official and personal capacity.

14.    Defendant ALMA ZAPATA ("Defendant Zapata") was an individual who worked as a court reporter for West Covina. Defendant Zapata is sued in her official and personal capacity.

15.    Defendant ANTOINETTE DAVIS ("Defendant Davis") was an individual who worked as a court reporter for West Covina. Defendant Davis is sued in her official and personal capacity.

16.    Defendant MARIA VILLALOBOS ("Defendant Villalobos") was an individual who worked as a court reporter for West Covina. Defendant Villalobos is sued in her official and personal capacity.

17.    Defendant PHYLLIS AGUILAR ("Defendant Aguilar") was an individual who worked as a court reporter for West Covina. Defendant Aguilar is sued in her official and personal capacity.

18.    Defendant MICHELLE C. WARRINER ("Defendant Warriner") was an individual who worked as a court reporter for West Covina. Defendant Warriner is sued in her official and personal capacity.

19.    Defendant SHERRI R. CARTER ("Defendant LA Court") was an individual who served as Executive Officer and Clerk of Court for the LA Court. Defendant LA Court is sued in her official capacity.

20.    Defendant CARLOS A. JACKSON ("Defendant Jackson") was a California licensed private investigator, Cal. BSIS No.: 28414. Defendant Jackson is sued in his personal and official capacity.

21.    Defendant DANIEL A. COVARRUBIAS-KLEIN, Cal. Bar No. 307645, ("Defendant Klein") was an individual who served as an attorney in the LA County Public Defender's office appointed by West

5

Covina to defend Plaintiff. Defendant Klein is sued in his personal and official capacity.

22.    Defendant SHANTAL RAE RODRIGUEZ GALLARDO, Cal. Bar No. 299686, ("Defendant Gallardo") was an individual who served as an attorney in the LA County Public Defender's office appointed by West Covina to defend Plaintiff. Defendant Gallardo is sued in her personal and official capacity.

23.    Defendant JANET ALDAPA ARAUJO, Cal. Bar No. 104019, ("Defendant Araujo") was a supervising attorney in the LA County Public Defender's office appointed by West Covina to defend Plaintiff. Defendant Araujo is sued in her personal and official capacity.

24.    Defendant ALEJANDRO VILLANUEVA is the LA County Sheriff ("Defendant Sheriff"). Defendant Sheriff is sued in his official capacity.

25.    Defendant DOE 1 is an individual who worked as a judicial assistant in the LA Court. He is sued in his personal and official capacity.

26.    Defendant DOE 2 is an individual who worked as an LA County Sheriff's Deputy in the in the LA Court. He is sued in his personal and official capacity.

27.    Defendant DOE 3 is an individual who worked as an LA County Sheriff's Deputy. He is sued in his official capacity.

28.    Defendant DOE 4 is an individual who worked as an LA County Sheriff's Deputy Supervisor over Defendant DOE 3. He is sued in his personal and official capacity.

29.    Defendant DOE 5 is an individual who worked as an LA County Sheriff's Deputy who worked in LA County Jail Defendant. He is sued in his personal and official capacity.

30.    Defendant DOE 6 is an individual who worked as a medical doctor for the LA County Sheriff. He is sued in his personal and official capacity.

31.    Defendant DOE 7 is an individual who worked as a Deputy in West Covina. He is sued in his personal and official capacity.

32.    Defendant DOE 8 is an individual who worked as a judicial assistant in the LA Court. She is sued in her personal and official capacity.

33.    Defendant DOE 9 is an individual who worked as a Sheriff's deputy in the LA Court. He is sued in his personal and official capacity.

34.    Defendant DOE 10 is an individual who worked as a Sheriff's deputy in the LA Court. She is sued in her personal and official capacity.

## JURISDICTION AND VENUE

35.    This Court has jurisdiction over the subject matter of this action under federal question jurisdiction, because it arises under federal law, including the U.S. Constitution. See 28 U.S.C. § 1331.

36.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights in violation of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

37.    The jurisdiction of the Court is founded upon 28 U.S.C. § 1343(3) and (4).

38.    This Court is authorized to render declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202, and Rule 57 of the Federal Rules of Civil Procedure.

39.    This Court is authorized to render and provide injunctive relief pursuant to 28 U.S.C. § 2283.

40.    This Court has jurisdiction over the plaintiffs' state law claims under the doctrine of pendent jurisdiction.

41.    All of the actions, omissions and events complained of herein took or take place in the County of Los Angeles, State of California, and within the venue of this Court.

42.    The amount in controversy exclusive of interest and costs exceeds the sum of $1,000,000.00.

43.    This Court has jurisdiction over the subject matter of this action under the ADA.

44.    Plaintiff alleges that he was disabled within the meaning of the ADA when agents for the State of California denied him equal and inclusive access to the LA Court.

45.    This Court has personal jurisdiction over ALL Defendants because Defendants work in Los Angeles, Cal.

## FACTS

46.    On Feb. 06, 2020, the LA Court recognized Plaintiff was proceeding without counsel in his defense of criminal charges.

47.    On Feb. 21, 2020, the LA Court appointed Defendant Jackson to assist Plaintiff in a criminal investigation.

48.   Plaintiff contacted Defendant Jackson and he agreed to assist Plaintiff in his criminal case by providing professional investigation services as ordered by the LA Court.

49.   Defendant Jackson failed to appear as ordered by the LA Court.

50.   Defendant Jackson failed to gather evidence and investigate the prosecution's allegations as Plaintiff requested.

51.   Defendant Jackson failed to respond to with Plaintiff's requests for communication concerning the criminal investigation.

52.   On May 14, 2020, Defendants Marcias, Parral, Gonzalez, Shepard, and Defendant DOE 8 (collectively "Judicial Assistant Defendants"), and each of them, colluded with Defendant Lewis to falsify the court record and falsified the record to make it appear that Plaintiff entered a plea on Mar. 16, 2020, when in fact there was no arraignment.

53.   On May 18, 2020, the LA Court made an emergency order without exception for disabled defendants requiring masks for all who needed to access the court.

54.   On Jun. 16, 2020, Plaintiff requested, and Defendant Gullon granted a disability accommodation that exempted Plaintiff from

covering his face to access the court because Plaintiff had asthma and trouble breathing when his face was covered.

55.    With his accommodation in hand, Plaintiff appeared at the entrance of the LA Court in West Covina and attempted to access the court for his scheduled arraignment as a criminal defendant.

56.    On Jun. 16, 18, 22, and 24, 2020 Defendant DOE 1 and Defendant DOE 2 assisted each other unlawfully to deny Plaintiff his right to access the court.

57.    On Sep. 11, and 14, 2020 Defendant DOE 2 unlawfully stopped Plaintiff from accessing the court.

58.    On Sep. 29, 2020, Judicial Assistant Defendants, and each of them, colluded with Defendant Lewis to falsify the court record and falsified the record to make it appear that Plaintiff received the discovery Plaintiff requested from the prosecution.

59.    On Oct. 15, 23, 26, and 27, 2020, Defendant DOE 2 unlawfully stopped Plaintiff from accessing the court.

60.    Defendant DOE 2 continues until this day to deny Plaintiff access to the court.

61.    On Oct. 15, 2020, Judicial Assistant Defendants, and each of them, colluded with Defendant Lewis to falsify the court record and falsified the record to make it appear that Plaintiff had not appeared as ordered.

62.    Defendant Lewis and Defendant Gullon (collectively "Judicial Defendants") colluded to deny and denied Plaintiff his right to proceed without counsel without a hearing in retaliation to Plaintiff requesting an ADA accommodation.

63.    Defendants Lewis had the authority to restrict Plaintiff's access to the court unlawfully from May 18, 2020, to present.

64.    Defendant Lewis continued to deny Plaintiff his right to proceed without counsel until the present day.

65.    Defendant Lewis revoked Plaintiff's disability accommodation without a hearing and without any explanation.

66.    Defendant Lewis continued to deny Plaintiff his right to disability accommodation until the present day.

67.    Judicial Assistant Defendants, and each of them, plotted to retaliate and retaliated against Plaintiff for requesting an ADA

12

accommodation by denying Plaintiff from accessing the court and by denying Plaintiff access to the record.

68. The actions Judicial Assistant Defendants, and each of them, were intentional and malicious because they knowingly assisted each other to injure Plaintiffs and legal claims made by Plaintiffs.

69. On or about Oct. 31, 2020, the LA County Jail bus transporting Plaintiff crashed.

70. Defendant Does 3 and 4 handcuffed Plaintiff and failed to secure him in his seat with a safety belt.

71. The accident caused the front of the bus to jump the object it hit, and this caused Plaintiff to bounce out of his seat to the aisle.

72. The accident caused injury to Plaintiff's lower left back.

73. Defendant Doe 3 was the driver of the LA County Jail bus transporting Plaintiff that day.

74. Defendant Doe 4 was Defendant Doe 3's supervisor.

75. Upon arrival to the LA County Jail, Defendant Doe 4 refused to provide Plaintiff with medical attention for his back injury.

76. While in the LA County Jail, Defendant DOE 6 refused to provide Plaintiff with medical attention for his asthma.

77.    Plaintiff has asthma, which is a breathing disability that requires regular breathing treatments in order for him to breath.

78.    Prior to being arrested, Plaintiff's pulmonary specialist prescribed, and Plaintiff received three treatments daily.

79.    During his incarceration of ten days, which began on Oct. 27, 2020, Plaintiff requested and Defendant DOE 6 denied Plaintiff breathing treatments.

80.    Defendant DOE 6 stated that LA County does not provide breathing treatments for inmates who suffer from asthma.

81.    Defendant DOE 6 refused to provide Plaintiff with a rescue inhaler.

82.    While in the LA County Jail, Defendant DOE 5 refused to provide Plaintiff with a kosher meal.

83.    Plaintiff explained to Defendant DOE 5 that he sincerely holds the religious belief that he is required to continue keeping his kosher diet while awaiting trial in jail.

84.    Defendant DOE 5 questioned Plaintiff about his strongly held religious belief, but Defendant DOE 5 was unconvinced of Plaintiff's sincerity.

85.    Plaintiff asked Defendant DOE 5 to contact his Rabbi, but Defendant DOE 5 responded that his orders from Defendant Sheriff were clear in that only certain inmates receive kosher meals and that Plaintiff failed to qualify as one of those inmates.

86.    Plaintiff filed grievances with Defendant Sheriff.

87.    Defendant Sheriff did not respond.

88.    After ten days in jail, Plaintiff had to sell $2,250 in property because had to bail out to alleviate his physical suffering.

89.    From Nov. 4, 2020, until the present time, ADA Defendants, and each of them, colluded with each other to deny Plaintiff access to the court to serve his petition for a writ of habeas corpus on the LA County District Attorney and to deny Plaintiff access to the court to appear for his trial.

90.    The LA Court ordered Defendant Klein to represent the criminal defendant, Plaintiff.

91.    Defendant Klein refused Plaintiff's request to appeal the decision to revoke Plaintiff's right to proceed without counsel.

92.    Defendant Klein refused to communicate with Plaintiff concerning the criminal charges against him.

93. Defendant Klein refused to communicate with Defendant Jackson concerning the alleged missing exculpatory evidence.

94. Defendant Klein failed to serve notice of his pitchess motion on the witness, causing Plaintiff to sit in jail until Plaintiff had to sell his property in order to bail out.

95. Defendant Klein erred by not filing papers to defend Plaintiff's right to be free from the medical restriction mandates that repeatedly denied Plaintiff his right to a fast and speedy trial.

96. Defendant Klein erred by not filing papers seeking discovery of the exculpatory videos, not investigating, and not responding to Plaintiff concerning the defense of his case.

97. The retaliatory actions of ADA Defendants and Retaliation Defendants were of the kind that would likely chill a person from exercising their free speech rights guaranteed by federal law.

98. As a direct and proximate result of these violations of Plaintiff's First Amendment free speech rights, Plaintiff suffered economic damages as set forth above and non-economic injuries, without limitation, physical injury to Plaintiff's back; loss of professional opportunities; emotional distress; and loss of consortium.

99.    On Nov. 15, 2021, Plaintiff arrived for his trial, and agents for Defendant Sheriff denied access to the court.

100.    Plaintiff requested Defendant DOE 10 grant Plaintiff disability accommodation to access the court and presented Defendant Sheriff with a medical recommendation that Plaintiff be exempt from the non-legislation mandating face coverings.

101.    Defendant DOE 10 unlawfully removed Plaintiffs from the courthouse and deputies refused to accept any papers from Plaintiff.

102.    Defendant Gallardo repeatedly stated that she must postpone Plaintiff's trial because Defendant Lewis found insufficient evidence of Plaintiff's disability to allow him access to the court.

103.    Defendant Lewis continued to retaliate against Plaintiff for Plaintiff continuing to request ADA accommodation finding an exclusion to the right for a defendant to face his accusers existed in the extra-judicial face-covering mandate.

104.    Plaintiff requested and Defendant Attorneys refused to appeal these decisions that limit Plaintiff's ability to access the court.

105.   From the day of her appointment to this day, Defendant Gallardo colluded with and continues to collude with ADA Defendants to postpone Plaintiff's trial against his wishes.

**FIRST CLAIM FOR RELIEF**
Violations of the ADA
**(Against Judicial Defendants, Attorney Defendants, Judicial Assistant Defendants, and Bailiff Defendants)**

106.   Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

107.   At the time of the alleged ADA violations, Plaintiff was a qualified individual with a disability as defined by the ADA.

108.   Defendants Lewis and Gullon (collectively "Judicial Defendants") and each of them owed a duty of care to refrain from discriminating unlawfully against Plaintiff's right to access to the court because Judicial Defendants were officers of the court assigned by the court to provide legal services in a criminal case against Plaintiff.

109.   Judicial Assistant Defendants, and each of them, owed a duty of care to refrain from discriminating unlawfully against Plaintiff's right to access to the court because Judicial Assistant Defendants were

officers of the court assigned by the court to provide legal services in a criminal case against Plaintiff.

110.   Defendants Gallardo, Klein, and Araujo (collectively "Attorney Defendants"), and each of them, owed a duty of care to refrain from discriminating unlawfully against Plaintiff's right to access to the court because Attorney Defendants were officers of the court assigned by the court to provide legal services in a criminal case against Plaintiff.

111.   Defendant DOES 1, 2, 7, 9, 10 (collectively "Bailiff Defendants") and each of them owed a duty of care to refrain from discriminating unlawfully against Plaintiff's right to access to the court because Bailiff Defendants were officers of the court assigned by the court to provide legal services in a criminal case against Plaintiff.

112.   From Jun. 16, 2020, to present, Judicial Defendants, Judicial Assistant Defendants, Attorney Defendants, Bailiff Defendants, Defendant LA Court, and Defendant Sheriff (collectively "ADA Defendants") and each of them knew or should have known Plaintiff was disabled.

113.   From Jun. 16, 2020, to present, ADA Defendants, and each of them, discriminated against Plaintiffs when ADA Defendants, and each

of them, unlawfully excluded Plaintiff from filing papers in court in his defense.

114.    From Jun. 16, 2020, to present, ADA Defendants, and each of them, discriminated against Plaintiff unlawfully because of Plaintiff's disability.

115.    From Jun. 16, 2020, to present, ADA Defendants, and each of them, breached their duty by discriminating against Plaintiff when ADA Defendants, and each of them, prevented Plaintiff from accessing the court for Plaintiff's scheduled hearing to defend himself against criminal charges, which resulted in Plaintiff being arrested for failure to appear.

116.    The discrimination of Plaintiff by ADA Defendants, and each of them, from Jun. 16, 2020, to present, resulted in the injury of unnecessarily prolonging Plaintiff's trial and expenses.

117.    But for the discrimination of Plaintiff by ADA Defendants, and each of them, Plaintiff's criminal trial would have not been prolonged.

118.    But for the discrimination of Plaintiff by ADA Defendants, and each of them, from Jun. 16, 2020, to present, Plaintiff would have not been arrested for failure to appear.

20

119.   As a result of the discrimination of Plaintiff by ADA Defendants, and each of them, Plaintiff suffered injuries, loss, or other expenses.

120.   But for the discrimination of Plaintiff by ADA Defendants, and each of them, Plaintiff would not have to pay costs to get out of jail.

## SECOND CLAIM FOR RELIEF
### Retaliation for Requesting ADA Accommodation
### (Against ADA Defendants, and Court Reporter Defendants)

121.   Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

122.   Defendants Mullis, Morales, Jobling, Etcheberria, Zapata, Davis, Villalobos, Aguilar, and Warriner (collectively "Court Reporter Defendants") and ADA Defendants, and each of them, owed a duty of care to refrain from discriminating unlawfully against Plaintiff's right to access to the court records because Court Reporter Defendants were officers of the court assigned by the court to provide legal services in a criminal case against Plaintiff.

123.   Court Reporter Defendants, and each of them, colluded with ADA Defendants, and each of them, to deprive and deprived Plaintiff of his right to access the record when ADA Defendants and Court Reporter Defendants ("Retaliation Defendants"), and each of them, denied

21

Plaintiff a copy of the oral transcripts of his hearings and denied Plaintiff his right to access the court.

124. Retaliation Defendants and each of them colluded with each other to deprive Plaintiff of his federally protected rights to substantial due process to be heard when Retaliation Defendants unlawfully met with each other outside the presence of Plaintiff to determine how Retaliation Defendants would unlawfully proceed against him and unlawfully proceeded against him.

125. Retaliation Defendants, and each of them, discriminated against Plaintiff unlawfully because Plaintiff requested a disability accommodation.

126. The discrimination of Plaintiff by Retaliation Defendants, and each of them, from Jun. 16, 2020, to present, resulted in the injury of unnecessarily prolonging Plaintiff's trial and expenses.

127. But for the discrimination of Plaintiff by Retaliation Defendants, and each of them, Plaintiff's criminal trial would have not been prolonged.

128.    But for the discrimination of Plaintiff by Retaliation Defendants, and each of them, from Jun. 16, 2020, to present, Plaintiff would have not been arrested for failure to appear.

129.    As a result of the discrimination of Plaintiff by Retaliation Defendants, and each of them, Plaintiff suffered physical injuries, property loss, and costs of case defense.

130.    But for the discrimination of Plaintiff by Retaliation Defendants, and each of them, Plaintiff would not have suffered physical injuries, property loss, and costs of case defense.

## THIRD CLAIM FOR RELIEF
### Violation of California's Unruh Civil Rights Act
### (Against Retaliation Defendants)

131.    Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

132.    Plaintiff was denied the full and equal accommodations, advantages, facilities, privileges, or services of the West Covina Court when Retaliation Defendants denied Plaintiff his rights to access the court and defend himself using the legal services provided by Retaliation Defendants.

133.    Retaliation Defendants denied Plaintiff the full and equal accommodations, advantages, facilities, privileges, or services associated with access to the court.

134.    Plaintiff's disability was a motivating factor for Retaliation Defendants' denial of Plaintiff's access to the court.

135.    Retaliation Defendants' wrongful denial of Plaintiff's full and equal accommodations, advantages, facilities, privileges, or services associated with access to the court caused Plaintiff to suffer injury because the wrongful denial caused Plaintiff to lose his rights to access the court, to access the record, to appeal, and to serve his appeal in the court.

136.    This loss of his rights caused Plaintiff to suffer physical injuries, property loss, and costs of case defense.

### FOURTH CLAIM FOR RELIEF
**Professional Malpractice**
**(Against Attorney Defendants, Judicial Assistant Defendants, Court Reporter Defendants, and Defendant Jackson)**

137.    Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

138.    The Attorney Defendants, Judicial Assistant Defendants, Court Reporter Defendants, and Defendant Jackson (collectively "Malpractice Defendants") owed a duty to Plaintiffs because Plaintiff was a defendant in a criminal case and law and order obligated Malpractice Defendants as officers of the court to serve professionally Plaintiff as a criminal defendant.

139.    Malpractice Defendants breached their duty to Plaintiff by making the mistakes that a reasonably situated legal professional would not have made when Malpractice Defendants denied Plaintiffs his rights to access the court, to notice, to a copy of the criminal case file, to be heard, and to proceed without counsel.

140.    Malpractice Defendants were the cause of these damages because the mistakes that caused the damages were reasonably connected to the harm that was incurred by the Plaintiff and because but for the mistakes made by Malpractice Defendants, Plaintiff would have not suffered damages.

141.    Plaintiff enjoyed an attorney client relationship with the Attorney Defendants.

142.     Malpractice Defendants denied Plaintiff his substantial rights to access the court, to proceed without representation, to access the record, to investigate the charges, to communicate confidentially with legal assistants, to subpoena witnesses, to access the evidence and cross-examine the witnesses against him, and to face his accusers, which are all protected by the federal law.

143.     These actions of and refusals to act by Malpractice Defendants against Plaintiff amounted to deliberate indifference to the rights of Plaintiff because Malpractice Defendants knew or should have known that their denial of substantial rights would injure Plaintiff.

144.     Malpractice Defendants denied Plaintiff his substantial rights under color of law because Malpractice Defendants were agents operating under the color of state law when they denied Plaintiff his substantial rights.

145.     Malpractice Defendants' wrongful actions against Plaintiff caused Plaintiff to suffer injury because the wrongful denial caused Plaintiff to lose his rights to access the court, to proceed without legal representation, to access the record, to appeal, and to serve his appeal in the court.

26

146.   These constitutional violations pervaded the entire criminal proceeding causing the prosecution to extend unnecessarily for years.

147.   This loss of his rights caused Plaintiff to suffer physical injuries, property loss, costs of case defense, and bail money.

## FIFTH CLAIM FOR RELIEF
### Motor Vehicle Traffic Injury
### (Against Defendant Doe 3)

148.   Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

149.   Defendants DOE 3 and 4 (collectively, "Accident Defendants") were LA County Sheriff's Deputies who worked for the LA County Jail when Plaintiff was injured in a traffic accident while in the custody of Accident Defendants.

150.   Defendant DOE 3 owed a statutory duty not to injure Plaintiff when Plaintiff was in the physical custody of Defendant DOE 3 and the LA County Jail.

151.   Defendant DOE 3 breached his duty not to injure Plaintiff when Defendant DOE 3 had an accident while transporting Plaintiff in an LA County motor vehicle in traffic.

152.    Defendant DOE 3 caused the physical injuries suffered by Plaintiff when Defendant DOE 3 breached his duty to refrain from injuring Plaintiff and crashed the LA County Sheriff motor vehicle transporting Plaintiff in traffic.

153.    The traffic accident caused by Defendant Doe 3 physically injured Plaintiff, and his back injury required and still requires medical treatment.

**SIXTH CLAIM FOR RELIEF**
**Eighth Amendment Violations**
**Denial of Medical Treatment**
**(Against Defendants DOE 4 and DOE 6)**

154.    Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

155.    Defendant DOE 4 owed a statutory duty to provide medical treatment for Plaintiff when Defendant DOE 3 injured Plaintiff because Defendant DOE 4 was the deputy in charge supervising Defendant Doe 3 and in charge of interviewing and providing access to medical treatment to the jail inmates.

156.    Plaintiff requested Defendant DOE 4 provide medical treatment for the injuries he sustained in the said traffic accident.

157. Defendant DOE 4 denied Plaintiff's request for medical treatment for the traffic accident caused by Defendant DOE 3.

158. Defendant DOE 4's denial of medical care further worsened Plaintiff's back injury from the said traffic accident.

159. But for Defendant DOE 4's denial of medical care, Plaintiff would not still be suffering to the degree he suffers from injury.

160. Defendant DOE 6 owed a statutory duty to provide medical treatment for Plaintiff when Plaintiff experienced an asthma attack while incarcerated in the LA County Jail because Defendant DOE 6 was a medical doctor employed by the LA County Jail to provide medical treatment for inmates like Plaintiff.

161. Defendant DOE 6 injured failed to assess Plaintiff's need for medical treatment and when Plaintiff requested from Defendant DOE 6 medical treatment for Plaintiff's breathing disability, Defendant DOE 6 refused to provide medical treatment.

162. Defendant DOE 6 was operating under the color of law because he was in charge of granting or denying medical treatment to Plaintiff during Plaintiff's incarceration in the LA County Jail.

163.    Plaintiff had a right under federal law to have reasonable medical care for his breathing disability when he was incarcerated in the LA County Jail.

164.    Defendant DOE 6 violated Plaintiff's federally protected right to receive reasonable medical care when he refused to treat Plaintiff for his breathing disability when Plaintiff was incarcerated in the LA County Jail.

165.    But for Defendant DOE 6's denial of reasonable medical care for Plaintiff's breathing disability, Plaintiff would not have been injured and still suffering from his breathing injury.

**SEVENTH CLAIM FOR RELIEF**
Eighth Amendment Violation
Denial of Kosher Food
(Against Defendant DOE 5)

166.    Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

167.    Defendant DOE 5 owed a statutory duty to provide kosher food for Plaintiff while Plaintiff was incarcerated in the LA County Jail because Defendant DOE 5 was in charge of interviewing inmates in the LA County Jail and providing kosher meals.

168.    Plaintiff requested Defendant DOE 5 provide kosher food for Plaintiff.

169.    Defendant DOE 5 denied Plaintiff's request for kosher food.

170.    Defendant DOE 5's denial of Plaintiff's request for kosher food caused Plaintiff to suffer emotional and physical injury.

171.    But for Defendant DOE 5's denial of Plaintiff's request for kosher food, Plaintiff would not have suffered emotionally and physically when he was incarcerated in the LA County Jail.

172.    Defendant DOE 5 owed a statutory duty to kosher meals for Plaintiff when Plaintiff was incarcerated because Defendant DOE 5 was the deputy in charge providing kosher meals to the LA County Jail inmates who sincerely held the religious belief of eating a kosher diet according to the ways of Orthodox Judaism.

173.    Defendant DOE 5 was operating under the color of law because he was employed by the LA County Jail to decide who gets kosher food.

174.    Defendant DOE 5's denial of kosher food deprived Plaintiff of his right to practice his religion of Orthodox Judaism and maintain a kosher diet, which is guaranteed to him by federal law.

175.   Defendant DOE 5's denial of Plaintiff's request for a kosher meal caused Plaintiff physical and emotional injuries and consequent monetary damages.

176.   Defendant DOE 5's denial of Plaintiff's request for a kosher meal was the proximate cause of the physical and emotional injuries and consequent monetary damages sustained by Plaintiff because Defendant DOE 5 denied the kosher food request.

## EIGHTH CLAIM FOR RELIEF
### Monell Related Claims
**(Against Judicial Defendants, Defendant Araujo, Defendant Sheriff, and Defendant LA Court)**

177.   Plaintiff hereby incorporates the preceding allegations as if fully rewritten herein.

178.   A municipality may be held liable for an officer's actions when a plaintiff establishes the officer violated their constitutional right under federal law.

179.   The Los Angeles County Sheriff's office is a municipality subject to Monell Claims under federal law.

180.   Defendant Sheriff was the supervisor of Defendant DOEs 3, 4, 5, and 6 (collectively "Jailor Defendants") and Bailiff Defendants because

Defendant Sheriff was the executive officer in charge of setting official municipal policy, knowingly allowing an unofficial custom, and regularly training and supervising agents working for the Los Angeles County Sheriff's office.

181.    Defendant Sheriff was deliberately indifferent in a failure to train or supervise Bailiff Defendants in the ADA because Bailiff Defendants repeatedly denied Plaintiff access to the court due to Plaintiff's medical disability.

182.    Defendant Sheriff was deliberately indifferent in a failure to train or supervise Bailiff Defendants in the ADA and Unruh because Bailiff Defendants repeatedly retaliated against Plaintiff due to Plaintiff's request for a disability accommodation.

183.    Defendant Sheriff was deliberately indifferent in a failure to train or supervise Defendant DOEs 4 and 6 in providing reasonable medical treatment to inmates because Defendant DOEs 4 and 6 denied Plaintiff medical services according to the standard operating procedures provided by Defendant Sheriff.

184.    Defendant Sheriff was deliberately indifferent in a failure to train or supervise Defendant DOE 5 in providing kosher food to

Orthodox Jewish inmates because Defendant DOE 5 denied Plaintiff kosher food according to the standard operating procedures provided by Defendant Sheriff.

185. Defendant Sheriff's setting official municipal policy, knowingly allowing an unofficial custom, and failure to regularly train and supervise agents working for his office violated the constitutional rights of Plaintiff and injured him physically, emotionally, and financially.

186. The LA Public Defender's Officer is a municipality subject to Monell Claims under federal law.

187. Defendant Araujo was an officer in the LA Public Defender's Officer in charge of supervising and training Defendant Attorneys in the ADA and in the professional responsibility of attorney.

188. Defendant Araujo was in charge of setting official municipal policy, knowingly allowing an unofficial custom, and regularly training and supervising agents working for the LA Public Defender's Officer in West Covina.

189. Defendant Araujo was deliberately indifferent in a failure to train or supervise Defendant Attorneys in the ADA because Defendant

34

Attorneys repeatedly denied Plaintiff access to the court due to Plaintiff's medical disability.

190.   Defendant Araujo was deliberately indifferent in a failure to train or supervise Attorney Defendants in the ADA and Unruh because Attorney Defendants repeatedly retaliated against Plaintiff due to Plaintiff's request for a disability accommodation.

191.   Defendant Araujo's setting official municipal policy, knowingly allowing an unofficial custom, and failure to regularly train and supervise agents working for her office violated the constitutional rights of Plaintiff and injured him physically, emotionally, and financially.

192.   Defendant LA Court is a municipality subject to Monell Claims under federal law.

193.   Defendant LA Court was the supervisor of Judicial Defendants and Reporter Defendants because Defendant LA Court was the executive officer in charge of setting official municipal policy, knowingly allowing an unofficial custom, and regularly training and supervising agents working for the LA Court.

194.   Defendant LA Court was deliberately indifferent in a failure to train or supervise Judicial Defendants and Reporter Defendants in the

ADA because Judicial Defendants and Reporter Defendants repeatedly denied Plaintiff access to the court and the record due to Plaintiff's medical disability.

195. Defendant LA Court was deliberately indifferent in a failure to train or supervise Judicial Defendants and Reporter Defendants in the ADA and Unruh because Judicial Defendants and Reporter Defendants repeatedly retaliated against Plaintiff due to Plaintiff's request for a disability accommodation.

196. Defendant LA Court's setting official municipal policy, knowingly allowing an unofficial custom, and failure to regularly train and supervise agents working for her office violated the constitutional rights of Plaintiff and injured him physically, emotionally, and financially.

197. The official government customs or policies put in place by the Judicial Defendants, Defendant Araujo, Defendant Sheriff, and Defendant LA Court ("Monell Defendants"), caused the unconstitutional behavior of Retaliation Defendants, Malpractice Defendants, Bailiff Defendants and Defendant DOEs 4, 5, and 6.

198.    But for the official government customs or policies put in place by the Monell Defendants, Retaliation Defendants, Malpractice Defendants, Bailiff Defendants and Defendant DOEs 4, 5, and 6 would not have injured Plaintiff.

## DEMAND FOR RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against all defendants, granting Plaintiff the following relief:

1.    The entry of judgment in favor of Plaintiff on each and every cause of action;

2.    Because ADA Defendants, and each of them, preventing Plaintiff from accessing the court and denying Plaintiffs the benefits of accessing the court, Plaintiff demands damages in an amount to be determined by the court, but no less than $140,000.

3.    Because Retaliation Defendants, and each of them, preventing Plaintiff from accessing the court and denying Plaintiffs the benefits of accessing the court to defend and the record to file an appeal under the ADA, the court should order the Retaliation Defendants to pay triple

the amount of damages the court orders to the ADA Defendants, but no less than $420,000.

4.   Because Retaliation Defendants, and each of them, preventing Plaintiff from accessing the court and denying Plaintiffs the benefits of accessing the court to defend and the record to file an appeal under the Unruh Act, the court should order the Retaliation Defendants to pay $4,000 in general damages for every time the ADA Defendants denied Plaintiff access to the court and Plaintiff requests special damages in the amount of three times the general damages, but no less than $120,000.

5.   Because the driving of Defendant DOE 3 caused an accident that caused Plaintiff to suffer physical injuries, the court should order Defendant DOE 3 to pay $40,000.

6.   Because the driving of Defendant DOE 3 caused an accident that cause Plaintiff to suffer physical injuries, the court should order Defendant DOE 3 to pay $40,000.

7.   Because Defendant DOEs 4 and 6 unlawfully denied medical services to Plaintiff, the Court should order Defendant DOE 3 to pay $100,000.

8.    Because Defendant DOE 5 unlawfully denied kosher meals to Plaintiff, the Court should order Defendant DOE 5 to pay $70,000.

9.    Because of Malpractice Defendants, and each of them, preventing Plaintiff from accessing the court and denying Plaintiffs the benefits of accessing the court to defend and the record to file an appeal, the court should order Retaliation Defendants to pay an amount of damages to be determined by the court, but no less than $420,000.

10.    Because Defendants Monell Defendants, and each of them, failed to train, supervise, and discipline their subordinates to protect and defend Plaintiff's right to access the court and the record, the court should order the Monell Defendants to pay an amount of damages to be determined by the court, but no less than $1,200,000.

11.    The award of the requested equitable relief and damages in the amount of two million dollars;

12.    The award of costs of the suit, interest, and legal costs; and

13.    Such other relief as the Court deems just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff demands a trial by jury on all issues that are so triable.

<u>**VERIFICATION**</u>

I, Jeffrey Pierce Henderson, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: February 15, 2022

Respectfully submitted,

Jeffrey Pierce Henderson
c/o 370 N. Cerritos Ave., Apt. 39
Azusa, Cal. [91702-3774]
Email: abba@eanruig.com
Voice Mail: (626) 804-7166

Plaintiff, Pro Se

40